FILED IN CHAMBERS
U.S.D.C ATLANTA

Date: Jul 14 2021

KEVIN P. WEIMER, Clerk

By: s/Kari Butler
          Deputy Clerk

# United States District Court

NORTHERN DISTRICT OF GEORGIA

UNITED STATES OF AMERICA

v.

Carlos Santana-Aguirre

**CRIMINAL COMPLAINT**

Case Number: 4:21-mj-35-WEJ

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief. On or about November 25, 2021 in Gwinnett County, in the Northern District of Georgia, defendant(s) did, possess 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II controlled substance.

in violation of Title 21, United States Code, Section(s) 841(a)(1) and 841(b)(1)(A).

I further state that I am a(n) DEA-TFO and that this complaint is based on the following facts:

PLEASE SEE ATTACHED AFFIDAVIT

Continued on the attached sheet and made a part hereof.  Yes

_____
Signature of Complainant
James Williams

Based upon this complaint, this Court finds that there is probable cause to believe that an offense has been committed and that the defendant has committed it.  Sworn to before me, and subscribed in my presence

July 14, 2021                                               at    Cartersville, Georgia
Date                                                                    City and State

WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE                 _____
Name and Title of Judicial Officer                              Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, James C. Williams, being duly sworn, hereby depose and state as follows:

1. I have been a Special Agent with the DEA since April 2009. I am currently assigned to the Atlanta Division, Rome Post of Duty (POD). Prior to my employment as a Special Agent with the DEA, I was employed by the U.S. Secret Service as a Special Agent for approximately two years and before that as a DEA Diversion Investigator for approximately two years.

2. Upon joining the DEA, I received 4 months of training in narcotics investigations and related legal matters at the DEA Training Academy in Quantico, Virginia.

3. During my assignment with the DEA, I have participated in numerous search and seizure warrants pertaining to the seizure of contraband and evidence, including warrants resulting in the seizure of illegal drugs, drug paraphernalia, drug records, and proceeds of drug trafficking. I have debriefed numerous defendants, informants, and witnesses, who possessed personal knowledge regarding drug trafficking organizations. I also have become familiar with and utilized investigative techniques such as, without limitation, electronic and physical surveillance, general questioning of witnesses, use of search warrants, use of informants, use of grand jury subpoenas, use of pen registers, and use of undercover agents.

4. Based on my training and experience in the investigation of drug traffickers, and based upon interviews I have conducted with defendants,

informants, and other witnesses and participants in drug trafficking activity, I am familiar with the ways in which drug traffickers conduct their business.  My familiarity includes: the various means and methods by which drug traffickers import and distribute drugs; their use of cellular telephones to facilitate drug activity; and their use of numerical codes and code words to conduct drug transactions.  I also am familiar with the ways that drug traffickers conceal, convert, transmit, and transport their drug proceeds, including, without limitation, the use of carriers to transport currency and proceeds, the use of third parties to purchase or hold title to assets, and the use of off-shore accounts.

5. I also know from my training and experience that individuals smuggle and/or transport illegal controlled substances using vehicles.  These individuals evade law enforcement by conducting counter-surveillance maneuvers known as surveillance detection runs, or more commonly known as "heat runs."  These maneuvers commonly consist of constant route changes, lane changes, U-turns, and making frequent stops at commercial retail stores among other maneuvers designed to make mobile vehicle surveillance more difficult and dangerous to law enforcement personnel.  Often, drug traffickers will reside in one location and store, or "stash," drug supplies in another. While traveling to stash locations, traffickers will often use privately owned vehicles. While traveling to and from stash locations, traffickers will often conduct the maneuvers described above and will take illogical routes from one location to another in an attempt to evade or confuse law enforcement surveillance efforts. In addition, I have consulted extensively with other experienced agents regarding drug trafficking activities. As a result, the knowledge that I have obtained during my law enforcement career

has been further informed by other law enforcement agents with experience conducting drug investigations.

### Sources of Information

6.  The facts and information in this affidavit are based in part on information provided to me by other law enforcement officers, as well as my personal experience with the case and my background as a DEA Special Agent. Since this affidavit is being submitted for an arrest warrant, I have not included every fact known to me concerning this investigation. Rather, I have set forth only those facts necessary to support the issuance of an arrest warrant.

7.  I make this affidavit in support of an application for the issuance of a criminal complaint and arrest warrant for Carlos SANTANA-AGUIRRE for violations of Title 21, United States Code, Section 841(a)(1) and Title 18.

### Probable Cause

8.  On November 25, 2020, Georgia State Patrol TFC Brodie Forrester observed a white in color Chevrolet Silverado bearing Georgia tag CJF-1856, traveling southbound on I-85 in DeKalb County, in the Northern District of Georgia. Trooper Forrester also observed the vehicle to have a window tint violation. Trooper Forrester then initiated a traffic stop at I-85 south and Pleasant Dale Road Exit 96. As Trooper Forrester approached the driver's side of the vehicle, he observed that there was a crack in the windshield over three inches in length - a windshield violation.  Trooper Forrester then made contact with the driver and sole occupant of the vehicle, Carlos SANTANA-AGUIRRE and asked for his driver's license and proof of insurance. While Mr. SANTANA-AGUIRRE was retrieving these items, Trooper Forrester smelled an odor of marijuana and observed what appeared to be small pieces of marijuana scattered throughout the passenger side

floorboard and seat. Trooper Forrester then asked Mr. SANTANA-AGUIRRE to exit the vehicle and walk to the rear. Trooper Forrester asked Mr. SANTANA-AGUIRRE where he was going and also from where he was coming. Mr. SANTANA-AGUIRRE stated he was coming from his cousin's residence and was traveling home. Trooper Forrester then asked when SANTANA-AGUIRRE last had marijuana in the vehicle and SANTANA-AGUIRRE stated that he had marijuana in the vehicle 2 days ago.

9. At this time a Trooper Charles Chapeau arrived on scene and approached the driver's side of the truck where he confirmed the odor of marijuana. Mr. SANTANA-AGUIRRE was then placed in handcuffs for officer safety. Both Troopers then conducted a search of the truck. Trooper Forrester located a small amount of marijuana in the back pocket of the passenger's seat. Trooper Forrester then located a black plastic bag under the passenger's seat containing 3 grey duct taped bundles consistent with narcotics packaging. Trooper Forrester then located a black and white bag containing 2 more similar bundles also in the rear of the vehicle. Mr. SANTANA-AGUIRRE was read his Miranda rights by Trooper Chapeau but stated he did not wish to talk. Mr. SANTANA-AGUIRRE was subsequently placed under arrest and transported to the Gwinnett County Police Department where he was turned over to Gwinnett County Investigators along with the 5 kilograms of cocaine and all other evidence.

## CONCLUSION

10. Based on the foregoing, my training and experience, and information obtained through the investigation to date, I respectfully submit there is probable cause to believe that Carlos SANTANA-AGUIRRE violated Title 21, United States code, Section 841(a)(1) and 841(b)(1)(A).